UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL FORBES and JULIE FORBES,     )
     )
     Plaintiffs,     )
     )
   -against-     )
     )
THE CITY OF NEW YORK; POLICE SERGEANT)
MICHAEL POWER, Shield No. 2712; POLICE   )
OFFICER THOMAS BRENNAN, Shield No. 7903;)    **05 Civ. 7331 (KMW) (JCF)**
JOHN DOES; RICHARD ROES; LINCOLN   )
CENTER FOR THE PERFORMING ARTS, INC.; )    **ECF CASE**
RICHARD GREEN, LINCOLN CENTER   )
ASSISTANT DIRECTOR OF SECURITY; JOHN   )
DEJESUS, LINCOLN CENTER SECURITY   )
SERGEANT; JOSE FELIPE, LINCOLN CENTER )
SECURITY OFFICER; MICHAEL MOES; PAUL )
POES,     )
     )
     Defendants.     )
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO RECONSIDER / ALTER OR AMEND

Jeffrey A. Rothman, Esq.
315 Broadway, Suite 200
New York, NY 10007
(212) 227-2980

Attorney for Plaintiffs Daniel Forbes and Julie Forbes

1

<u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................iii

Preliminary Statement ....................................................................................................1

ARGUMENT .....................................................................................................................3

      A.      The Court Misapplied The Brentwood Academy Factors With An
             Excessive And Unwarranted Rigidity, And Additionally Incorrectly
             Analyzed Certain Factors……....................................................................3

      B.      Contrary To The Statement Of The Court In Its May 25, 2007 Order,
             Plaintiffs Indeed Have Alleged Joint Action Amongst Lincoln Center
             Defendants And City Defendants, And The Court Further Did Not
             Consider Adickes V. Kress & Co. In Making Its Determination With
             Regard To Joint Action.............................................................................12

      C.      In The Alternative, The Court Should Alter Or Amend Its Order To
             Permit The Reinstatement Of The New York State Law Claims
             Against Lincoln Center Defendants..........................................................14

      D.      Plaintiffs Should Also Be Permitted To Amend The First Amended
             Complaint To Allege Further Relevant Facts...........................................18

CONCLUSION ..................................................................................................................21

TABLE OF AUTHORITIES

Adickes v. Kress & Co., 398 U.S. 144, (1970)……………..………………….........2, 12

Allaire Corp. v. Okunus, 433 F.3d 248, 250 (2nd Cir. 2006) …………………………21

Andujar v. Hewitt, 2002 U.S.Dist.Lexis. 14294 (S.D.N.Y. 2002) ...……………..11, 12

Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,
531 U.S. 288, 295-296, (2001) …………………………………...................................2, 9

Branum v. Clark, 927 F.2d 698, 705 (2nd Cir. 1991)....................................................22

Brodeur v. City of New York, 2002 U.S. Dist. LEXIS 4500 (SDNY) .......................22

Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961)……………………..10

Cook v. Sheldon, 41 F.3d 73 (2nd Cir. 1994) …………………………………16, 17, 18

Conopco, Inc. v. Roll Int'l, 231 F.3d 82 (2nd Cir. 2000) ………………..……………19

Edmonson v. Leesville Concrete Co., 500 U.S. 614, 640 (1991) ..…………………3

Kramer v. Time Warner, Inc., 937 F.2d 767 (2nd Cir. 1991) …………..…………..19

Lansing v. City of Memphis, 202 F.3d 821, (6th Cir. 2000) ………..……...…..……..4

Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744 (1982)...........................10

National Council Of Arab Americans and Act Now To Stop War & End Racism
Coalition v. City of New York, et al., 478 F.Supp.2d 480 (S.D.N.Y 2007) ……..…...20

Pritzker v. City of Hudson, 26 F.Supp.2d 433 (SDNY 1998) …………..………..16

Prowiser v. Bon-Ton, Inc., 426 F.Supp.2d 165 (S.D.N.Y. 2006) ……………..…….13, 14

Savino v. City of New York, et al., 331 F.3d 63, (2nd Cir. 2003) ………..…………18

Wade v. Byles, 83 F.3d 902, 904 (7th Cir., 1996) .......................................................10

Wickersham v. City of Columbia, 371 F.Supp.2d 1061 (W.D. Missouri 2005) ……5

Wickersham v. City of Columbia, 481 F.3d 591 (8th Cir. 2007) ……………………6, 8

## STATUTES AND RULES

28 U.S.C. § 1367 ................................................................................................2, 14

42 U.S.C. § 1983 ...............................................................................................1,3

Local Rule 6.3…………...................................................................................1

Fed.R.Civ.Pro. 15(c) ……………………………………………………………..21

Fed.R.Civ.Pro. 59(e) ……….................................................................... 2, 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIEL FORBES and JULIE FORBES,      )
          )
         Plaintiffs,      )
          )
   -against-      )
          )
THE CITY OF NEW YORK; POLICE SERGEANT)
MICHAEL POWER, Shield No. 2712; POLICE  )
OFFICER THOMAS BRENNAN, Shield No. 7903;)   **05 Civ. 7331 (KMW) (JCF)**
JOHN DOES; RICHARD ROES; LINCOLN    )
CENTER FOR THE PERFORMING ARTS, INC.; )   **ECF CASE**
RICHARD GREEN, LINCOLN CENTER    )
ASSISTANT DIRECTOR OF SECURITY; JOHN )
DEJESUS, LINCOLN CENTER SECURITY   )
SERGEANT; JOSE FELIPE, LINCOLN CENTER )
SECURITY OFFICER; MICHAEL MOES; PAUL )
POES,          )
          )
         Defendants.    )
------------------------------------------------------------------X

      This memorandum is respectfully submitted on behalf of plaintiffs Daniel and Julie

Forbes, in support of Plaintiffs' Motion for Reconsideration or, in the alternative, for Alteration

or Amendment, of the Court's May 25, 2007 (filed May 29, 2007) Order dismissing the First

Amended Complaint as to Lincoln Center Defendants.

## PRELIMINARY STATEMENT

      The Court has overlooked a number of pivotal factual matters and misapplied or omitted

mention of controlling and important decisions, and should pursuant to Local Rule 6.3 should

therefore reconsider and reverse its May 25, 2007 Order dismissing the First Amended

Complaint (hereinafter "FAC ") as to Lincoln Center Defendants, and direct the Clerk to

reinstate the FAC as against Lincoln Center Defendants.  Such reconsideration is warranted

because the Court misapplied the factors that bear upon the question of state action as articulated

1

in Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295-296, 121 S.Ct. 924, 930 (2001), treating those factors with an excessive and unwarranted rigidity, and additionally because the Court incorrectly analyzed certain factors within that analysis.

Reconsideration is also proper in the present circumstances because, contrary to the statement of the Court in its May 25, 2007 Order, the First Amended Complaint indeed does allege joint action amongst Lincoln Center Defendants and City Defendants, and the Court further did not consider the factual similarities between the case at bar and those facts supporting the conspiracy allegations that were sufficient to withstand a motion for summary judgment in Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970).

In the alternative, pursuant to Fed.R.Civ.Pro. 59(e), the Court should alter or amend its order to permit the reinstatement of the New York State Law claims against Lincoln Center Defendants, as supplemental jurisdiction over these claims is warranted in the case at bar because they are so related to claims in the action that continue to exist against City Defendants "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  There is a common nucleus of operative fact that exists among and between the Federal and New York State Law claims against all the parties, and judicial inefficiency and multiplication of cost would result if a separate action had to be filed against Lincoln Center Defendants in New York State Supreme Court.

Lastly, and as the Plaintiffs requested in their Memorandum of Law in Opposition, they should also be permitted to amend the First Amended Complaint (hereinafter "FAC") to allege further facts that have come to light in summary judgment motion practice in another case pending in this district since the time of the filing of the present motion, in support of Plaintiffs' claims of pervasive entwinement and conspiracy between Lincoln Center Defendants and City

2

Defendants.  Plaintiffs also request the opportunity to further amend the complaint to allege that Officer Brennan told Mr. Forbes, in sum and substance, "This is between you and Lincoln Center."

## ARGUMENT

**A.** **The Court Misapplied The Brentwood Academy Factors With An Excessive And Unwarranted Rigidity, And Additionally Incorrectly Analyzed Certain Factors**

Both Plaintiffs and Lincoln Center Defendants in their motion papers have cited passages of the License Agreement that specifically make reference to the Lincoln Center Defendants as the City's "*agents"* in managing and maintaining Damrosch Park (See, Defendants' Memorandum of Law in Support of Their Motion to Dismiss at page 3-4: LCPA manages Damrosch Park and provides security in Damrosch Park "*on behalf of and as an agent of the City of New York*." (emphasis added)) (See also, Plaintiffs' 12/26/05 Memorandum of Law in Opposition at page 5).  Plaintiffs also have alleged that Lincoln Center Defendants, acting under that agency relationship, determined the boundaries of what they considered to be appropriate political speech in a public park on their campus.  The result of this confluence of factors was the interference with (and ultimately physical attack, arrest, and prosecution) Mr. Forbes' free speech in that traditional public forum, while at the same time the free speech of other individuals whose comments were not directly contrary to Lincoln Center Defendants' interests were not interfering with.

The Court on page 3 of its May 25, 2007 Order quotes from Justice O'Connor's *dissent* in Edmonson v. Leesville Concrete Co., 500 U.S. 614, 640 (1991), with regard to the exclusivity needed for satisfaction of the public function factor of the Brentwood Academy analysis.  The opinion of the Court authored by Justice Kennedy, however, enunciated the standard for the pre-

3

Brentwood Academy public function test as follows:  "In determining Leesville's state-actor status, we next consider whether the action in question involves the performance of a traditional function of the government."  Id. at 624.  As explained below, the exercise by Lincoln Center Defendants of dominion over the exercise of free speech in this traditional public forum amounts to state action because it satisfies the public function factor, the pervasive entwinement factor, the symbiotic relationship factor - and encompasses the conceptual overlap amongst all of these categories which, post- Brentwood Academy, are to be considered amongst the totality of the circumstances concerning the question of state action as "factors", and not as separable "tests" that each need to be satisfied pursuant to a rigid formula.

Plaintiffs also have pointed out the pervasive entwinement of Lincoln Center and the City of New York with regard to choosing and scheduling First Amendment events in this traditional public forum (See, Plaintiffs' 12/26/05 Memorandum of Law in Opposition at page 5).

 The level of permanent entwinement and public function between Lincoln Center Defendants and City Defendants far exceeds that which was operative with regard to the temporary lease that was at issue in the case of Lansing v. City of Memphis, 202 F.3d 821, 828-829 (6th Cir. 2000), cited by the Court on page 4 of its May 25, 2007 Order.  As Plaintiffs further pointed out in Footnote 2 to their January 27, 2005 Sur-Reply to Defendants' Motion to Dismiss, the Lansing opinion pre-dated Brentwood Academy, and was properly criticized by a district judge in the Western District of Missouri for misapplying as rigid "tests" the factors that the Court in Brentwood Academy considered as part of its overall, qualitative analysis of the totality of the factors that might bear upon the question of state action.  The Lansing Court ran through these "tests" with a formalistic and improper rigidity which the Supreme Court in Brentwood Academy explained clearly should not be applied.  The Court in the case at bar engaged in a

4

similarly formalistic and improperly rigid analysis in its May 25, 2007 Order dismissing the First

Amended Complaint against the Lincoln Center Defendants.  The District Court in Wickersham

v. City of Columbia, 371 F.Supp.2d 1061, 1082-1083 (W.D. Missouri 2005) described the

Lansing opinion as follows:

> For similar reasons, Lansing v. City of Memphis, 202 F.3d 821 (6th Cir.
> 2000) is not persuasive, both because it is factually distinguishable and because it
> is inconsistent with Supreme Court precedent…..
>
> Moreover, the Sixth Circuit's insistence in Lansing, that virtually all the
> potential tests for determining state action must be satisfied to find state action is
> contrary to current Supreme Court precedent. *See* Brentwood Academy v.
> Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 302-303, 148 L. Ed. 2d
> 807, 121 S. Ct. 924 (2001). In *Brentwood,* the Supreme Court held:
>
>> It avails the Association nothing to stress that the State neither coerced nor
>> encouraged the actions complained of. "Coercion" and "encouragement"
>> are like "entwinement" in referring to kinds of facts that can justify
>> characterizing an ostensibly private action as public instead. Facts that
>> address any of these criteria are significant, but no one criterion must
>> necessarily be applied. When, therefore, the relevant facts show pervasive
>> entwinement to the point of largely overlapping identity, the implication
>> of state action is not affected by pointing out that the facts might not loom
>> large under a different test.
>
> Id. at 303.  *Brentwood* also undermines any suggestion advanced by Defendants
> that the Eighth Circuit does not use the symbiotic relationship test except in race
> discrimination cases. *See* Lubin v. Crittenden Hospital Ass'n, 713 F.2d 414, 416
> (8th Cir. 1983); *also see* San Francisco Arts & Athletics, Inc. v. United States
> Olympic Committee, 483 U.S. 522, 556-57, 97 L. Ed. 2d 427, 107 S. Ct. 2971
> (1987).

Wickersham at 1082-1083.

The District Court's decision in Wickersham was affirmed by the 8th Circuit less than

three months ago at Wickersham v. City of Columbia, 481 F.3d 591 (8th Cir. 2007), which I will

cite from at length below because of the similarities in the relevant factual circumstances and

issues between that case and the case at bar in terms of state action.  The 8th Circuit in

Wickersham held:

> The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to a private party a power "traditionally exclusively reserved to the State," see Jackson v. Metro. Edison Co., 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974), where a private actor is a "willful participant in joint activity with the State or its agents," see Adickes v. S. H. Kress & Co., 398 U.S. 144, 151, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), and where there is "pervasive entwinement" between the private entity and the state, see Brentwood, 531 U.S. at 291. *These particular circumstances are merely examples and not intended to be exclusive.* See id. at 295.

Wickersham at 599 (emphasis added).  Referencing and distinguishing the Lansing decision as

part of its analysis, the 8th Circuit concluded that that the private corporation at issue in that case

(named "Salute") was indeed a state actor because "[i]n sum, the speech restrictions imposed at

the annual air show involved state action on the part of Salute because it was consistently

entangled with the City in effecting them…."  Wickersham at 601.  The 8th Circuit in

Wickersham explained:

> Our ultimate conclusion must turn on the particular facts of the case, since "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961). The one unyielding requirement is that there be a "close nexus" not merely between the state and the private party, but between the state and the alleged deprivation itself. See Brentwood, 531 U.S. at 295. No such nexus exists where a private party acts with the mere approval or acquiescence of the state, see Blum v. Yaretsky, 457 U.S. 991, 1004-05, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982), but a private entity may be considered a state actor if it "has acted together with or has obtained significant aid from state officials" in furtherance of the challenged action. Lugar, 457 U.S. at 937.
>
> …
>
> Here, the city's role was far more than "mere acquiescence," for the city not only provided critical assistance in planning and operating the show, but also played an active role in enforcing the particular speech restrictions challenged in

this action. City police, not Salute volunteers, enforce the restrictions every year, a role that Captain Martin characterized as part of "the agreement that's in place" with Salute. The active and prearranged role of the police in effectuating the event's private speech policies also sets this case apart from <u>Lansing v. City of Memphis</u>, 202 F.3d 821 (6th Cir. 2000), another case relied on by Salute. In <u>Lansing</u>, the court specifically noted that the City of Memphis had made no attempt to instruct its officers on how to police unwanted speech activities on festival grounds. <u>Id</u>. at 833-34.

The direct role of the Columbia police in enforcing Salute's speech restrictions provided the critical nexus, absent in other cases, between the challenged conduct and the exercise of state authority. See, e.g., <u>Gaston</u>, 43 F.3d at 909 n.4 (appellant conceded absence of nexus); see also <u>D'Amario v. Providence Civic Ctr. Auth.</u>, 783 F.2d 1, 3 (1st Cir. 1986) (city officials' enforcement of private speech restriction provides requisite nexus between alleged deprivation and state involvement).

Salute contends that its contract with the city transformed the airport into its own temporary private property, over which it had the right to decide who was welcome and who was not and thereafter to seek police assistance in ejecting trespassers. To be sure, the mere invocation of state legal procedures, including police assistance, does not convert a private party into a state actor. See <u>Youngblood v. Hy-Vee Food Stores, Inc.</u>, 266 F.3d 851, 855 (8th Cir. 2001) (invoking state assistance to apprehend shoplifter).

The contributions of the Columbia police go beyond the kind of neutral assistance that would normally be offered to private citizens in enforcing the law of trespass. In <u>Griffin v. Maryland</u>, the Supreme Court distinguished between a deputy sheriff's enforcement of trespass law and his active enforcement of a private park's segregation policy, holding that the latter situation amounted to state action. 378 U.S. 130, 136-37, 84 S. Ct. 1770, 12 L. Ed. 2d 754 (1964). Here, the police department's security plan instructed the officers to enforce Salute's rules rather city ordinances, and police took an active role in identifying and intercepting protesters at the air show, including Wickersham and Doyle. The city's cooperation with Salute was directed toward effectuating the challenged policy rather than merely keeping the peace. See <u>Howerton v. Gabica</u>, 708 F.2d 380, 385 (9th Cir. 1983) (active and repeated police involvement amounts to state action even though response to citizen's complaint does not).

When a private entity has acted jointly and intentionally with the police pursuant to a "customary plan," it is proper to hold that entity accountable for the actions which it helped bring about. See <u>Murray v. Wal-Mart, Inc.</u>, 874 F.2d 555, 558-559 (8th Cir. 1989); see also <u>Dossett v. First State Bank</u>, 399 F.3d 940, 950 (8th Cir. 2005) (applying joint action test for state action to § 1983 action alleging First Amendment violation). In making its findings the district court

7

specifically rejected the suggestion that Salute had asked for nothing more from the city than the use of its property. The record supports the trial court's findings, for it contains evidence of a mutual understanding that city police would work to restrict speech activities at the air show according to Salute's wishes.

Although certain changes occurred between the entry of the temporary and permanent injunctions, including Posner's statement to the police disclaiming authority to direct their actions at the air show, the overall "momentum" of the cooperation remained unaltered. See Brentwood, 531 U.S. at 301 (quoting Evans v. Newton, 382 U.S. 296, 301, 86 S. Ct. 486, 15 L. Ed. 2d 373 (1966)). In its order granting the permanent injunction the district court again found that Salute and the city had acted "like partners" with respect to the 2005 air show and that their mutual understanding about the city's role in enforcing the speech restrictions continued as before.  In light of the evidence showing a continuing history of cooperation and Captain Martin's admission that he would have enforced Salute's rules at the 2005 air show even where city ordinances had not been violated, we cannot characterize these findings as clearly erroneous. Even if the police no longer received directions from Salute at the air show or consulted Salute members about whom to arrest, they nevertheless continued to respond to the broader directives of Salute by enforcing its speech restrictions as part of their security duties. Cf. Brentwood, 531 U.S. at 301 n.4 ("underlying reality" of private entity's relationship to the state often trumps legal formalities erected in attempt to thwart a finding of state action).

Since Salute and the city were knowingly and pervasively entangled in the enforcement of the challenged speech restrictions, we conclude that Salute was a state actor when it interfered with appellees' expressive activities. The district court did therefore not err in holding that Salute's curtailment of appellees' freedom of expression constituted state action and was actionable under § 1983.

Wickersham at 597-599 (footnotes omitted).

As with the case at bar, the employees of the private party who ran the air show in

Wickersham did not themselves engage in the physical conduct that violated the First

Amendment in that case.  So too Lincoln Center's security guards ultimately relied upon the

NYPD's police officers to apply physical force to Plaintiffs and to take Mr. Forbes into custody

(though they participated directly in the filing of false charges against him through the execution

of supporting affidavits to the summonses).  But Plaintiffs allege that it was the Lincoln Center

Defendants who determined the bounds of what would be considered acceptable speech in

Damrosch Park on the night of August 21, 2004; that the Lincoln Center Defendants affirmatively attempted to interfere with that speech by Mr. Forbes which they found objectionable; and, when they did not like Mr. Forbes' response to them, the Lincoln Center Defendants called in the police who acted according to either a customary or formal policy to suppress speech the Lincoln Center Defendants did not want spoken on their campus.

As cited in Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at page 3, the determination as to whether state action exists from an ostensibly private party became much more fluid with the Supreme Court's decision in Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001):

> What is fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government. Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents." We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control."

Id. at 295-296 (internal citations omitted). This determination is a "necessarily fact-bound inquiry," Id. at 298, quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744 (1982).

"Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860 (1961).

9

Without the benefit of discovery, Plaintiffs are unable to determine what the actual relationship and understandings between Lincoln Center Defendants and City Defendants were and are.  To dismiss the case before Plaintiffs have had an opportunity to explore this relationship further in support of their theories of liability, for which they have already put forth more than ample supporting facts, would result in a manifest injustice.  As explained in the 8th Circuit's opinion in <u>Wickersham</u>, Plaintiffs have indeed alleged Lincoln Center Defendants' exercise of a traditional government function.  Above and beyond simply providing normal "security" services at Damrosch Park, such as preventing property damage or breaking up a fight (which could also constitute state action under the appropriate circumstances), the security guards and their supervisor Mr. Green took it upon themselves to decide upon the appropriate parameters of free speech in that traditional public forum.  That is a categorically different type of activity, and constitutes state action, particularly at the pleading level.

<u>Wade v. Byles,</u> also cited by the Court in its May 25, 2007 Order (and also decided prior to <u>Brentwood Academy</u>) was distinguished from the facts at bar in Plaintiffs' 12/26/07 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at page 10, where plaintiffs pointed to the fact that the security guards in <u>Wade</u> only had responsibility over a decidedly non-public area (the lobby) of the publicly owned housing areas at issue in that case, and were not permitted to act outside of that non-public area.

Plaintiffs have also pointed to the pervasive financial entwinements, including agreements of insurance and indemnification by the City to Lincoln Center, between these entities with regard to Lincoln Center's permanent management of Damrosch Park, which further militates toward a finding of state action in these circumstances, particularly at the pleading level.  (See, Plaintiffs' 12/26/07 Memorandum of Law in Opposition to Lincoln Center

10

Defendants' Motion to Dismiss at pages 10 to 12).  The portion of <u>Andujar v. Hewitt</u>, 2002

U.S.Dist.Lexis. 14294 (S.D.N.Y. 2002), cited by the Court on page 5 of its May 25, 2007 Order

further does not take into account that the insurance, indemnity and agency relationships that

exist between Lincoln Center and the City of New York and are outlined in the License

Agreement are different in kind from the "funding" or "regulation" that were discussed in Judge

Scheindlin's opinion in <u>Andujar</u>.  Plaintiffs indeed do allege that the City and its police "provided

significant encouragement to" Lincoln Center Defendants "in regard to the unlawful conduct

alleged" by way of the ongoing relationship and understandings between the parties.  Further, as

Judge Scheindlin also explained in <u>Andujar</u>,  in their monitoring and interference with free

speech in Damrosch Park, Lincoln Center Defendants

> have exercised power possessed by virtue of state law and made possible only
> because the wrongdoer is clothed with the authority of state law." <u>Kia P. v.
> McIntyre</u>, 235 F.3d 749, 755 (2d Cir. 2000) (quoting <u>West v. Atkins</u> , 487 U.S.
> 42, 49, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988)), cert. denied, 122 S. Ct. 51
> (2001).  Private conduct may become "so entwined with governmental policies or
> so impregnated with a governmental character as to become subject to the
> constitutional limitations placed upon state action." 235 F.3d at 757 (quoting
> <u>Perez v. Sugarman</u>, 499 F.2d 761, 764 (2d Cir. 1974)) (internal quotation marks
> and citation omitted). This occurs when the private parties "are performing a
> function public or governmental in nature and which would have to be performed
> by the Government but for the activities of the private parties." <u>Id</u>.

Andujar at *28-*29.


**B.**      **Contrary To The Statement Of The Court In Its May 25, 2007 Order, Plaintiffs
Indeed Have Alleged Joint Action Amongst Lincoln Center Defendants And City
Defendants, And The Court Further Did Not Consider Adickes V. Kress & Co. In
Making Its Determination With Regard To Joint Action**


The First Amended Complaint indeed does allege joint action amongst Lincoln Center

Defendants and City Defendants, and the Court further did not consider the factual similarities

between the case at bar and those facts supporting the conspiracy allegations that were sufficient to withstand a motion for summary judgment in <u>Adickes v. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598 (1970).

The First Claim in Plaintiffs' FAC is entitled "Conspiracy to Deprive Rights Under the United States Constitution and 42 U.S.C. § 1983" (See, FAC ¶¶ 45-47).  In support of that claim Plaintiffs have alleged the attempt of the City and Lincoln Center to grant Lincoln Center's resident organizations (The New York City Philharmonic and the Metropolitan Opera) privileged access to Central Park's Great Lawn (See, FAC at ¶42).  The FAC also alleges that after Mr. Forbes made a comment supporting equal access for all people to the Great Lawn (See, FAC at ¶¶18 and 20), the individual Lincoln Center Defendants attempted to, and conspired with the individual City Defendants (pursuant to the ongoing conspiracy between Lincoln Center and its resident organizations with the City of New York) to, interfere with and retaliate for Mr. Forbes' free speech that was contrary to Lincoln Center and the City's perceived interests (See, FAC ¶¶ 21, 24-26, 29-36, 38, 39-41, 45-47, 54-61).  Plaintiffs have also alleged that other individuals who were also loudly exclaiming various things were not treated similarly by Defendants, and did not have their free speech rights interfered with (See, FAC ¶¶ 19 and 43).

Plaintiffs discussed the factual similarities between the <u>Adickes</u> case and the case at bar in Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at pages 12 to 15.  If Plaintiffs have not adequately alleged conspiracy in the case at bar, as the Court indicates in its May 25, 2007 Order, then neither did Sandra Adickes, despite the Supreme Court's conclusion to the contrary.  Plaintiffs are entitled to discovery to prove up the meeting of the minds alleged and, as per Justice Black's comments quoted at Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss

at page 15, to present this to a jury for consideration of "the human factors" that ultimately should determine whether these claims stand or fall.  The Court does not mention the <u>Adickes</u> decision in its May 25, 2007 Order.

Plaintiffs further discussed the potential retaliatory motives animating Lincoln Center Defendants, relating both to personal affront and to Lincoln Center's longstanding and ongoing relationship to the City of New York concerning privileged access to the Great Lawn.  See, Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at pages 17-20.

The case cited by the Court, <u>Prowiser v. Bon-Ton, Inc.</u>, 426 F.Supp.2d 165 (S.D.N.Y. 2006) involves security guards at a private retail store, and is inapplicable to the case at bar, in which Lincoln Center's security guards monitored and interfered with First Amendment exercise in a public park over which their employer exercises perpetual jurisdiction, and with regard to which they are referenced as agents of the City of New York pursuant to a licensing agreement entered into between their employer and the City, and where Plaintiffs have alleged retaliatory action pursuant to an conspiracy between Lincoln Center and the City to suppress speech on Lincoln Center's campus that it deems inappropriate.  Insofar as there is any applicability of <u>Prowiser</u> to the case at bar, it is to illustrate that the "special circumstances" it references that may constitute state action have been met here, particularly on the pleading level.

C.     **In The Alternative, The Court Should Alter Or Amend Its Order To Permit The Reinstatement Of The New York State Law Claims Against Lincoln Center Defendants**

In the alternative, if the Court decides not to reinstate the Federal claims against Lincoln

Center Defendants, then, pursuant to Fed.R.Civ.Pro. 59(e), the Court should alter or amend its order to permit the reinstatement of the New York State Law claims against Lincoln Center Defendants, as supplemental jurisdiction over these claims is warranted in the case at bar because they are so related to claims in the action that continue to exist against City Defendants "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  There is a common nucleus of operative fact that exists among and between the Federal and New York State Law claims against all the parties, and judicial inefficiency and multiplication of cost would result if a separate action had to be filed against Lincoln Center Defendants in New York State Supreme Court.

This common nucleus of operative fact is evidenced most clearly by the sworn false statement made by Lincoln Center Defendant John DeJesus on the summonses issued to Plaintiff Daniel Forbes and filed with the New York County Criminal Court[1], and the entwinement of Plaintiffs' New York State Law claims against Lincoln Center Defendants with Plaintiffs' Federal and New York State Law claims against the City Defendants.  It would be an unnecessary and unwarranted multiplication of expense and judicial resources for Plaintiffs to have to file a separate case in New York State Supreme Court to litigate these New York State Law claims that are so entwined with the case against City Defendants.

Defendants themselves recognize that "the Court's exercise of its supplemental jurisdiction would be appropriate here because all the causes of action arise from the same facts, and the interests of judicial economy would be served by deciding the motion with regard to all claims, rather than dismissing the state claims for lack of subject matter jurisdiction."  (See,

---

1 The summonses were annexed as Exhibit A to the 12/26/05 Declaration of Jeffrey A. Rothman submitted in support of Plaintiffs' opposition to Lincoln Center Defendants' Motion to Dismiss.

14

Defendants' Memorandum of Law in Support of Their Motion to Dismiss at page 16). On this limited point Plaintiffs agree with Lincoln Center Defendants. Contrary to Lincoln Center Defendants' arguments, however, Plaintiffs have more than adequately plead their state law claims such as to survive Defendants' motion to dismiss.

As pointed out in Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at pages 20-23, in addition to stating a claim with regard to all the state law claims through conspiracy with the City Defendants, a number of the state law claims are asserted directly against certain of the Lincoln Center Defendants. For example, a malicious prosecution claim is stated against Defendant DeJesus for the sworn false statements made on supporting affidavits that were made part of the summonses issued to Mr. Forbes (See Plaintiffs' 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at pages 15-17), and filed with the Criminal Court to initiate the criminal prosecutions against Mr. Forbes that were eventually dismissed in their entirety.

In <u>Pritzker v. City of Hudson</u>, 26 F.Supp.2d 433 (SDNY 1998) the Court held that, as to two officers who swore out criminal complaints against the plaintiff, accusing the plaintiff of perjury:

> The Court finds … that O'Neil and Kisselbrack did play an active role in the initiation and continuation of criminal proceedings against plaintiff. It is undisputed that Kisselbrack signed the felony complaint and, therefore, the first element [of malicious prosecution - the initiation of criminal proceedings against the plaintiff] is established as to him. The Complaint alleges that O'Neil initiated criminal proceedings against plaintiff on numerous occasions.

<u>Pritzker v. City of Hudson</u>, 26 F.Supp.2d 433, 442 (SDNY 1998). See also, <u>Cook v. Sheldon</u>, 41 F.3d 73 (2nd Cir. 1994):

> Though section 1983 provides the federal claim, we borrow the elements

15

of the underlying malicious prosecution tort from state law. *See Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 39 (2d Cir. 1985), *cert. denied*, 475 U.S. 1027, 89 L. Ed. 2d 337, 106 S. Ct. 1227 (1986). In New York, a plaintiff alleging malicious prosecution must show: (1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice. *See Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304 (1977).

On the facts pled by Cook, he has demonstrated these elements. (1) The Troopers commenced a criminal proceeding against him by formally charging Cook with violating the VIN statute and having him arraigned before the town justice. *See Carl v. Ayers*, 53 N.Y. 14, 17 (1873) (warrantless arrest followed by information and preliminary hearing before a magistrate constitutes commencement). (2) The proceeding ended in Cook's favor when the charges against him were dismissed. *See Loeb v. Teitelbaum*, 77 A.D.2d 92, 100-01, 432 N.Y.S.2d 487, 493-94 (App. Div. 1980) (formal abandonment by prosecutor constitutes favorable termination). Finally, as discussed above, (3) the Troopers lacked probable cause, and, (4) if Cook is to be believed, they were driven by vengeance. *See Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 444-45, 377 N.E.2d 975 (1978) (spite satisfies actual malice requirement).

<u>Cook</u> at 79.  Further, Defendant Richard Green is implicated in this activity due to his command role over Defendant DeJesus.

Plaintiffs' claims of negligence, and negligent hiring, screening, retention, supervision, and training, are imputed directly upon the individual Lincoln Center Defendants in their capacity as Lincoln Center security officers and supervisors, and these individuals' conduct in violation of New York State Law is cognizable against Lincoln Center itself by way of the doctrine of respondeat superior.

Lastly, although Plaintiffs purported to withdraw their claim of abuse of process because they had not alleged special damages stemming therefrom, Federal Courts describing the elements of this tort have not referenced special damages as being required to bring this tort, either under §1983 or under New York State Law, and Plaintiffs should be permitted to proceed

16

forward on their abuse of process claims as well.  As the Second Circuit also stated in <u>Cook v.</u>

<u>Sheldon</u>:

> As with malicious prosecution, we turn to state law to find the elements of the malicious abuse of process claim. *See Raysor*, 768 F.2d at 39. *See generally Wilson v. Garcia*, 471 U.S. 261, 277, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985) (state law is authoritative source of elements of section 1983 cause of action). In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (1984); *Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278 (1975).
>
> Here, the Troopers clearly employed criminal process against Cook by having him arraigned on charges of illegal possession of a car with no VIN. This arraignment caused Cook to be held in custody. *See Mormon v. Baran*, 35 N.Y.S.2d 906, 909 (Sup. Ct. 1942) (legal process means that a court issued the process, and the plaintiff will be penalized if he violates it). Cook alleges that the Troopers did this to harm Cook, as retribution for advising Serrano. *See Board of Educ. of Farmingdale*, 38 N.Y.2d at 404, 380 N.Y.S.2d at 642-43 ("collateral objective" includes retribution).

<u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2nd Cir. 1994).  See also, <u>Savino v. City of New York, et al.</u>,

331 F.3d 63, 76-77 (2nd Cir. 2003):

>  In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Malicious abuse of criminal process also supports liability under § 1983. *Id.*

Plaintiffs in the case at bar have alleged a retaliatory motive for the issuance of process

on the part of Lincoln Center's security guards, pleading in the alternative that it may be based

on a perceived personal affront by Mr. Forbes and/or connected to Plaintiffs' conspiracy claims.

Plaintiffs further claim that this process was abused by Lincoln Center Defendant John DeJesus

(and his supervisor Richard Green, who Plaintiffs allege was responsible in his supervisory role) in filling out the summonses falsely, for the collateral purpose of suppressing speech critical of the City's inegalitarian policies relating to access to the Great Lawn.

**D**.      **Plaintiffs Should Also Be Permitted To Amend The First Amended Complaint To Allege Further Relevant Facts**

Lastly, and as the Plaintiffs requested in their Memorandum of Law in Opposition, they should also be permitted to amend the First Amended Complaint (hereinafter "FAC") to allege further facts that have come to light in summary judgment motion practice in another case pending in this district since the time of the filing of the present motion, in support of Plaintiffs' claims of pervasive entwinement and conspiracy between Lincoln Center Defendants and City Defendants.  Plaintiffs also request the opportunity to further amend the complaint to allege that Officer Brennan told Mr. Forbes, in sum and substance, "This is between you and Lincoln Center."

Evidence has emerged as part of summary judgment motion briefing in the case of National Council Of Arab Americans and Act Now To Stop War & End Racism Coalition v. City of New York, et al., 04 Civ. 6602 (WHP), concerning the City's discriminatory practices in prohibiting *the very protest that Mr. Forbes was advocating on behalf of* in the case at bar on August 21, 2004 in Damrosch Park, and granting privileged access to Lincoln Center's resident organizations (the Metropolitan Opera and New York Philharmonic).  The briefings submitted on motions for summary judgment in National Council Of Arab Americans briefings have demonstrated that the City has engaged in illegal and dishonest practices, including the purposeful undercounting of attendance figures for Met and Philharmonic performances on the

18

Great Lawn, in order to give privileged access to the Great Lawn for those resident organizations

of Lincoln Center, and to prevent protest activity on the Great Lawn[2].  It also emerged during the

course of that summary judgment briefing that the City routinely allowed Lincoln Center's

resident organizations to hold concerts on the Great Lawn without providing a "rain date,"

despite the City's original assertion that a rain date was required for any large event held on the

Great Lawn.

As Judge Pauley stated in his decision denying that part of the City's motion for summary

judgment concerning Plaintiffs' as-applied challenge to the denial of the use of the Great Lawn in

National Council Of Arab Americans:

> To summarize, there are disputed issues of fact regarding whether the City's purported justifications for denying Plaintiffs' permit application were a pretext for content based discrimination…. Defendants have maintained throughout this litigation that Plaintiffs were treated the same as all other permit applicants seeking to hold events on the Great Lawn…. *Yet there is evidence contradicting this contention and supporting Plaintiffs' claim that the City favored applicants such as the Opera and Philharmonic*.

National Council Of Arab Americans and Act Now To Stop War & End Racism Coalition v.

City of New York, et al., 478 F.Supp.2d 480 at *36 (S.D.N.Y 2007) (internal cites omitted)

(emphasis added).  A final pre-trial conference is scheduled in National Council Of Arab

Americans for August 24, 2007.

Plaintiffs are entitled to obtain discovery as to this close, shady, and nepotistic

---

2       While the emails that contain that information are presently covered by a protective order in those cases, the protective order permits "the disclosure of attendance figures of events held in Central Park."  References to these emails, that illuminate the City's shady practices undertaken to give the Met and Philharmonic this preferential treatment with regard to access to the Great Lawn, are made in Plaintiffs' April 24, 2006 brief in Opposition to Defendants' Motion for Summary Judgment in National Council Of Arab Americans.

Local Rule 6.3 prohibits me from annexing these materials to a declaration on this Motion for Reconsideration / Amendment or Alteration absent Court direction ("No affidavits shall be filed by any party unless directed by the court"), but as they are publicly filed documents entered on the docket in National Council Of Arab Americans, the Court may take judicial notice of them.  See, Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2nd Cir. 2000); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2nd Cir. 1991).  If the Court desires I would be happy to

relationship between the City and Lincoln Center's resident organizations with regard to the privileged access these resident organizations have received from the City with regard to the Great Lawn.  This relationship is at the heart of one of Plaintiffs' theories of conspiracy between Lincoln Center and its agents and the City and its agents (notwithstanding that Lincoln Center's security guards explicitly were the also the City's agents in Damrosch Park, per the licensing agreement executed as between Lincoln Center and the City), and Plaintiffs are entitled to explore that theory, which has been adequately plead and is now further supported by public filings in another pending case.  Plaintiffs should be afforded the opportunity to amend their pleadings to add these revelations that have emerged from the National Council Of Arab Americans case, and to seek evidence through discovery that will support this theory of conspiracy amongst the Defendants and the retaliatory motive that accompanied it, which Plaintiffs allege resulted in the attack on both Plaintiffs, leaving Mr. Forbes bloody and Ms. Forbes soiled with her own urine, and in Mr. Forbes' arrest and bogus prosecution that was initiated by both Police Officer Brennan and Lincoln Center guard John DeJesus, both of whom signed the accusatory instrument that initiated the failed prosecution against him.

Plaintiffs also request the opportunity to allege that Officer Brennan told Mr. Forbes, in sum and substance, "This is between you and Lincoln Center," which is further indicative of the central role that Lincoln Center Defendants had in spurring into effect the police abuse of Plaintiffs.

Fed.R.Civ.Pro. 15(c) states that the Court shall grant leave to permit amendment of the pleadings "shall be freely given when justice so requires."  Justice requires that leave be so given in these circumstances.

---

submit a courtesy copy of these materials in further support of this motion for the Court's convenience.

As Plaintiffs also requested in their 12/26/05 Memorandum of Law in Opposition to Lincoln Center Defendants' Motion to Dismiss at page 23, in the event that the Court otherwise deems the allegations of the FAC to be in some manner insufficient, plaintiffs respectfully request the opportunity to amend the FAC to correct any deficiencies or omissions in pleading in that regard as well.

## CONCLUSION

Plaintiffs have more than adequately met the pleading standard the Court cited in its May 25, 2007 Order from Allaire Corp. v. Okunus, 433 F.3d 248, 250 (2nd Cir. 2006) ("A complaint may not be dismissed under the Rule unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.")(internal citations omitted by the Court). As Plaintiffs also cited in their 12/26/05 Memorandum in Opposition to Lincoln Center Defendants' Motion to Dismiss at page 2, "This standard is applied 'with particular strictness' when a plaintiff complains of civil rights violations." Brodeur v. City of New York, 2002 U.S. Dist. LEXIS 4500 (SDNY) at *6-*7, citing Branum v. Clark, 927 F.2d 698, 705 (2nd Cir. 1991).

The political atmosphere when Mr. Forbes made his comments about the Great Lawn at Damrosch Park on August 21, 2007 was tense and volatile. It was a week prior to the scheduled start of the Republican National Convention here in New York City, and the NYPD and City was on edge with regard to the pending litigation concerning the attempt of the National Council of Arab-Americans and the ANSWER Coalition to hold their protest on the Great Lawn, and ramping up elaborate and wide-ranging policing activities for the Republican National Convention itself. Plaintiffs have, since the incidents underlying this lawsuit, learned of the cozy relationship existing between the City and Lincoln Center's resident organizations with regard to

21

those organizations' privileged access to the Great Lawn.  Plaintiff has good cause to believe that

this cozy relationship, in addition to the normal retaliatory animus motivating the Lincoln Center

Defendants stemming from the perceived personal slights from Mr. Forbes, was a factor in the

attempt to suppress his speech, and in the ultimate attack on both Mr. and Ms. Forbes, and Mr.

Forbes' wrongful arrest and prosecution.  Plaintiffs deserve an opportunity to obtain evidence to

prove up their theories of liability against Lincoln Center Defendants.

For the forgoing reasons, the Court should reconsider, or in the alternative amend or

alter, its May 25, 2007 Order as requested above, and permit the amendments to the FAC

requested above.  If the Court is amenable to hearing oral argument that will address these

various points, either as part of the Initial Conference that has been scheduled as between

Plaintiffs and City Defendants for June 29, 2007 at 11 a.m., or on another date more convenient

for the Court, Plaintiffs would appreciate the opportunity to so address the Court.


Dated:        New York, New York
              June 12, 2007


                                        _____/S/_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        315 Broadway, Suite 200
                                        New York, NY 10007
                                        (212) 227-2980
                                        Attorney for Plaintiffs DANIEL FORBES
                                        and JULIE FORBES