```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
DANIEL FORBES and JULIE FORBES,

                    Plaintiffs,
                                              05 CV 7331 (KMW)
          -against-                           ORDER

THE CITY OF NEW YORK; POLICE SERGEANT
MICHAEL POWER, Shield No. 2712; POLICE
OFFICER THOMAS BRENNAN, Shield No. 7903;
JOHN DOES; RICHARD ROES; LINCOLN CENTER
FOR THE PERFORMING ARTS, INC.; RICHARD
GREEN, LINCOLN CENTER ASSISTANT
DIRECTOR OF SECURITY; JOHN DEJESUS,
LINCOLN CENTER SECURITY SERGEANT;
JOSE FELIPE, LINCOLN CENTER SECURITY
OFFICER; MICHAEL MOES; PAUL POES,

                    Defendants.
----------------------------------------x
```

KIMBA M. WOOD, U.S.D.J.:

On May 25, 2007, the Court dismissed all claims against Defendants Lincoln Center for the Performing Arts, Inc. ("LCPA"); Richard Green; John DeJesus; and Jose Felipe (collectively, the "Lincoln Center Defendants"). On June 12, 2007, Plaintiffs Daniel and Julie Forbes ("Plaintiffs") filed a motion for reconsideration of the Court's May 25, 2007 Order. While Plaintiffs' motion for reconsideration was pending, I became aware that I could have a conflict of interest.[1] I therefore

---

[1] At a January 9, 2008 conference, I stated to the parties that I had recently learned of the following financial arrangements between the New York City Ballet, a resident organization of Lincoln Center of which I am a member of the Board of Directors, and Defendant LCPA. First, the New York City Ballet performs in a building on the Lincoln Center campus owned by the City of New York. That building is leased to LCPA, which subleases the building to City Center for Music and

1

recused myself from further consideration of this matter and Plaintiffs' motion for reconsideration is now pending before my successor judge.

At a January 9, 2008 conference with the parties, I stated my belief that there are significant grounds for reconsideration of my May 25, 2007 Order. See Tr. 5, 8, 9-10.  After I recused myself from this case, I received a January 14, 2008 letter from Plaintiffs moving to vacate my May 25, 2007 Order. In the letter, Plaintiffs argue that their "claims (and any new motion to dismiss by [the] Lincoln Center Defendants) should be presented to the new judge assigned to the case in the status that pre-dated the Court's [May 25, 2007] ruling." 2. Underlying Plaintiffs' motion is a recognition that the standard of review for a motion for reconsideration differs from the standard of review for a motion to dismiss.

---

Drama. City Center for Music and Drama is the "sole member" of the New York City Ballet. Second, LCPA operates the public areas of the Lincoln Center campus on behalf of all of the resident organizations. LCPA is responsible for plaza maintenance and security operations. Pursuant to long-standing agreements, the resident organizations contribute a pro rata share of maintenance and security costs. City Center for Music and Drama, on behalf of the New York City Ballet and the New York City Opera, contributes 17 percent of those costs. The New York City Ballet therefore contributes 8.5 percent of the maintenance and security costs borne by LCPA. Third, all of the resident organizations, including the New York City Ballet, contribute to an excess insurance policy for liabilities exceeding $1,000,000. The excess insurance policy is maintained by LCPA. Based on my role as a member of the Board of Directors of the New York City Ballet; these financial arrangements; and Plaintiffs' intention to seek damages that could trigger the excess insurance policy, as expressed at the January 9, 2008 conference, I recused myself from further consideration of this case.

I did not have actual knowledge of the facts that caused my recusal at the time of my May 25, 2007 Order, but given my position on the Board of Directors of the New York City Ballet, I could have learned of the relevant facts at that time. In contrast to the situation in Liljeberg, I recused myself as soon as I became aware of the conflict, but this situation nevertheless "create[s] precisely the kind of appearance of impropriety that [28 U.S.C.] § 455(a) was intended to prevent." Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 868 (1988).

The Supreme Court has ruled that "in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Liljeberg, 486 U.S. at 864. Under this analysis, I believe that vacatur of my May 25, 2007 Order is required. First, because Plaintiffs' motion for reconsideration is currently pending on the single substantive issue on which I ruled in this case, no party can make "a showing of a special hardship by reason of their reliance on the original judgment." Id. at 869. Second, vacatur in this case "will not produce injustice in other cases; to the contrary . . . [it] may prevent a substantive injustice in some future case by

3

encouraging a judge or litigant to more carefully examine possible grounds for disqualification." Id. at 868. Finally, "[t]he very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible" and "a finding by another judge" that I "merely possessed constructive knowledge, and not actual knowledge, is unlikely to significantly quell the concerns of the skeptic." Id. at 865 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813 (1986))(emphasis in original). Particularly this final factor, public confidence in the judicial process, requires vacatur of my May 25, 2007 Order.

The prevailing decisional law, however, holds that a judge who recuses herself "should take no further action in the proceeding, except whatever ministerial acts are necessary to transfer the case to a successor judge. A recused judge cannot vacate his or her previously final judgment." 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 63.63 (3d ed. 2007).[2] I must

---

[2]Although the Second Circuit has not directly addressed this issue, every Circuit that has considered it has concluded that a recused judge must take no further adjudicative action in the case. See Doddy v. Oxy USA, Inc., 101 F.3d 448, 456-58 (5th Cir. 1996)(holding that after a judge recuses herself, she can take no action "other than the purely ministerial one of transferring the case to another judge"); El Fenix de Puerto Rico v. The M/Y Johanny, 36 F.3d 136, 141-42 (1st Cir. 1994)(holding that a "recused judge should take no further action except to enable administrative reassignment of the case" and that the trial judge therefore erred in simultaneously recusing himself and vacating a previously rendered judgment); Russell v. Lane, 890 F.2d 947, 948 (7th Cir. 1989)(remanding the case to a successor judge to decide a motion to vacate certain orders when the original trial judge had recused himself and the grounds for recusal

4

therefore refrain from addressing Plaintiffs' motion to vacate. The motion to vacate should be addressed to Judge Buchwald, to whom this case has been randomly assigned.

    SO ORDERED.

Dated:    New York, New York
          January 25, 2008

                                        */s/ Kimba M. Wood*
                                        Kimba M. Wood
                                United States District Judge

---

had existed when the orders were entered); Moody v. Simmons, 858 F.2d 137, 143 (3d Cir. 1988)(holding that after announcing his intention to recuse himself, a trial judge "may enter no further orders in the case" and has only the power to "perform[] ministerial duties necessary to transfer the case to another judge"); Stringer v. United States, 233 F.2d 947, 948 (9th Cir. 1956).